IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

––––––––––––––––––––

MID-CONTINENT CASUALTY CO.,

      Plaintiff,

    v.                                                       CIV-11-0329 CG/LAM

I&W, INC., CIRCLE S FEED STORE, LLC,
RICHARD L. MENUEY and MARY L. MENEUY,

      Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COVERAGE,
AND DENYING AS MOOT DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT,
and
PLAINTIFF'S MOTION ON PUNITIVE DAMAGES**

THIS MATTER comes before the Court upon a Motion for Summary Judgment on Coverage **(Doc. 82)** filed by Mid-Continent Casualty Co. ("MCC" or "Plaintiff").[1] Having reviewed the parties' briefs and applicable law, I find that Plaintiff's motion on coverage is well-taken and shall be GRANTED.  In light of this ruling, other pending motions (Defendants' cross-motion for summary judgment (Doc. 93) and Plaintiff's motion on punitive damages (Doc. 85) shall be denied as moot.

**BACKGROUND**

---

[1] I&W filed for bankruptcy relief, was initially dismissed voluntarily from the federal lawsuit on July 13, 2011 pending relief from the automatic stay from the United States Bankruptcy Court, District of New Mexico, *see In re I&W, Inc*., cause number 10-12366-j7 ("bankruptcy case"), Doc. 4.  A relief from stay was granted on MCC's motion on August 2, 2011. See Doc. 18 at 1. The Court subsequently granted Plaintiff's motion to amend the complaint to join I&W as a necessary party to this action because it is the owner of the policies at issue.  See Doc. 19.  However, pursuant to an order of the Bankruptcy Court, Circle S and the Menueys  were given the authority to "take the lead in litigating the issues that are the subject matter of the Litigation so that I&W and the Trustee will not be expected or required to litigate the issues." (Doc. 18-1).

This is an insurance coverage dispute. In this federal action, Plaintiff Mid-Continent Casualty Company ("MCC") seeks a determination of whether it owes Defendant I&W a duty to indemnify I&W for damages sought and awarded in an underlying state court action.  In the state court lawsuit, Circle S Feed Store, L.L.C, Richard L. Menuey and Mary L. Menuey (Defendants in this federal lawsuit) sued I&W, Inc. ("I&W") for property damage due to its solution mining operation underneath the property owned by I&W and the Defendants.

I&W's solution mining operations took place between 1995 and 2008.  I&W owned and operated a brine well facility, which was involved in the solution mining of salt from brine water.  In such an operation, a well is drilled into a salt zone. The operator injects fresh water into the salt zone, where it dissolves the salt.  The resulting brine water is pumped out and sold. Through the mining process, the salt zone dissolves away from the earth in which it was embedded, leaving behind an underground cavern.

I.      Undisputed Facts

The undisputed facts can be summed up as follows.  Lowell Irby formed I&W with a partner in 1957.  Lowell's son, Eugene Irby, began working at I&W in 1990 and eventually became its vice president and general manager in 2001 or 2002, and worked as  I&W's business manager in 1995.  Both Lowell and Eugene were aware of the brine well mining process, in that it involved fresh water injection in a well to wash salt from the geological formation to make a brine solution that is then pumped out of the well.  George Parchman, a manager at I&W, was in charge of the day-to-day operation of the brine well starting in 1995.  Kevin Wilson also worked for I&W for 26 years and took over the day-to-day operation in 2005 or 2006.

In November 2009, the Circle S parties filed the state court action, alleging that their property had been diminished in value due to I&W's mining operation. The state court lawsuit

alleged property damage sustained by Circle S and the Menueys to the structures and

improvements on the land due to the existence of the man-made cavern under their property. The

lawsuit was filed in the Fifth Judicial District Court, State of New Mexico, County of Eddy, and

is styled as *Circle S Feed Store, LLC, Richard L. Menuey and Mary L. Menuey v. I&W, Inc.*,

case number CV-2009-793 ("state court lawsuit"). On February 27, 2012, a verdict was reached

in favor of Defendants. *See* Defts' Ex. B to Defts' MSJ, Doc. 93.  The jury found I&W to be

100% negligent and that this negligence caused Circle S' damages. The jury also found I&W's

actions to be reckless or wanton. The jury awarded Defendants $703,000.00 in compensatory

damages for I&W's negligence, and $300,000.00 in punitive damages.[2]

For purposes of this motion, the parties disagree about the degree of training received by

Wilson, or the level of expertise of any of the other individuals (including the Irbys or

Parchman) in the area of brine well mining. For example, Lowell Irby stated that he would

"assume" that the more you mine the salt that makes the brine water, the larger the cavern gets.

Doc. 82-1 at 15.  However, he also stated that he assumed the cavern "could just fill right back

up. . . ." Doc.82-1 at 15:5-6.  Eugene Irby stated that "to a degree" he knew it was common

sense that the cavern would become bigger as the salt was washed out of the formation. Doc. 82-

4:110:10-22.  The parties also disagree about the nature and extent of the knowledge any of these

individuals had concerning eventual instability of the cavern roof, or about how the creation of

the caverns resulted in the roof collapse.  The Irbys, for example, stated they were not aware of

other cavern collapses in other areas.  Eugune Irby stated that he was not aware of collapses that

had occurred elsewhere, or was not sure.  Doc. 82-1 at 17-18.  Kevin Wilson, I&W's operations

---

[2]

 The Special Verdict is attached as Ex. C to Defendants' supplemental brief on the issue of Defendants' standing to assert
a claim under the UIPA. Doc. 69-3.  Judgment was entered in the state court case, No. D-503-CV-2009-00793, on April
24, 2012, according to the case docket of the Fifth Judicial District, County of Eddy, State of New Mexico.

manager, stated that he was also unaware that brine well operations created a cavern or that there

had been collapses of caverns in other states and countries. Doc. 93, Ex. H at 9:12-19.

MCC issued a Commercial Liability Policy ("Policy") in 2000 which was renewed yearly

through June 1009.  The insuring provision states in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damage" to which this
> insurance applies.

Pltff's Exs. 11-19, Sec. I (1)(a) (Coverage).  The Policy also contains a provision for "exclusion"

which states that the insurance does not apply to "'bodily injury'" or "'property damage'"

expected or intended from the standpoint of the insured. . . ."  Section I(2)(a).

The Court has considered other facts set forth in the parties' briefs, but finds that their

inclusion here is not necessary in light of the Court's disposition of the motion.

## II.    Legal Standard

Summary judgment is appropriate when there are no genuinely disputed issues of

material fact and, viewing the record in the light most favorable to the non-moving party, the

movant is entitled to judgment as a matter of law. *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th

Cir. 2007). Once the party moving for summary judgment properly supports its motion, it is

incumbent on the non-moving party to respond with some showing of an issue of genuine

material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), *overruled on other

grounds by Kendrick v. Penske Transp. Svcs.*, 220 F.3d 1220, 1228 (10th Cir. 2000). The non-

moving party may not rest on averments in its pleadings, but instead must establish specific

triable issues. *Gonzales v. Miller Cas. Ins. Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991). The

mere existence of some alleged, immaterial factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242 (1986).

## DISCUSSION

MCC offers several arguments to support its position that it has no duty to indemnify

under the Policy:  (1) there was no "occurrence" as defined in the Policy; (2) coverage is

excluded under the intentional injury exclusion; (3) the diminution in value damages sought by

Defendant are not "property damages" and thus are not covered under the Policy; and (4) the Oil

Industries Limitation Endorsement provides no coverage.  The Court has spent considerable time

reviewing the various arguments and supporting legal citations, and concludes that while MCC's

motion would be denied under the first three arguments, the critical argument is the one relating

to the Oil Industries Limitation Endorsement because it clearly, and as a matter of law, precludes

coverage.  While an explanation of all of the arguments are not necessary in light of the Court's

ruling based on Plaintiff's last argument, the Court provides a synopsis of its reasoning

concerning the other arguments raised.

## I.      Coverage under Insuring Provision and Exclusion in Policy

The insuring and exclusion provisions in the Policy, when interpreted in a manner

consistent with the reasonable expectations of the insured, and consistent with the relevant law,

indicate that the property damage which occurred when the roof collapsed under Defendants'

property is covered under the Policy.

A.      "Occurrence"

        a.

"Occurrence" is defined in the Policy as "an accident." While the term "accident" is not defined

in the Policy, New Mexico law defines "accident" as an event that takes place without one's

foresight or expectation, or an event "which is not expected or designed." *O'Rourke v. New Amsterdam Cas. Co.*, 68 N.M. 409, 412 (1961) (terms not defined in policy must be interpreted in its usual, ordinary and popular sense);*Vihstadt v. Travelers Ins. Co.*, 103 N.M. 465, 466 (1985)) (defining "accident" as an event that occurs without design or purpose). Based on the available testimony, it appears that Lowell and Eugene Irby were aware that salt mining leaves behind underground caverns, but none of the testimony can be characterized as stating they expected or *designed* that the caverns would grow to a size that would result in property damage. *Cmp. Vihstadt v. Travelers Ins. Co.*, 103 N.M. 465, 466, 709 P.2d 187, 188 (1985) (holding aspirin poisoning following intentional ingestion of 50 aspirin was not an accidental injury under health policy, where stated intention was to commit suicide); *Hartford Fire Ins. Co. v. Gandy Dancer, LLC*, --- F.Supp.2d ----, 2012 WL 1132499 (D.N.M.,2012) (where contractor's intent in designing water diversion system was to divert water on landowner's property, flooding of landowner's property was not an "occurrence" or "accident" under the policy).

   b.

Plaintiffs rely on the intentional nature of the mining process, but the cases on which they rely involved intentional acts where the injury was *expected* or designed to that end. *See*, e.g., *Knowles v. United Services Auto. Ass'n,* 113 N.M. 703, 832 P.2d 394 (N.M.,1992), a gate was erected on an easement (an intentional act) in order to prohibit access to the property (the injury).[3]  Those cases are factually inapposite because while the salt mining was carried out by intentional acts, the harm that resulted (the cavern size and roof collapse) was not an event that

---

[3]  MCC relies on  cases similar to *Knowles,* where the injury or harm was brought about by an intentional act and the injury itself was by design (trespass, wrongful eviction).  In those cases, the courts found that those events were not accidents even though there was no  knowledge of the *legal* consequences  for those acts; it was enough that the harm was carried out by design.  *See, e.g., Browning v. Amer. Family Mut. Ins. Co.*, 396 Fed.Appx. 496 (10th Cir. 2010) (involving  trespass) (cited in Reply Brf., Doc. 82 at 12); *Red Ball Leasing, Inc. v. Hartford Acc. and Indem. Co.*,  915 F.2d 306, 308 (7th Cir. 1990) (involving repossession of trucks based on erroneous information).

occurred by design. Thus, Plaintiffs' motion for summary judgment would be denied on the issue of whether an "occurrence" took place because there is evidence that I&W did not expect the property damage that occurred as a result of the continued enlargement of the caverns from the salt mining.

B.      Exclusionary Provision

Under the express terms of the Policy, there is no coverage where the property damage is expected or intended by the insured.   Plaintiff contends that even assuming there would be coverage under the Policy, there is no duty to indemnify because the exclusion provision applies.


Under New Mexico law, a provision that excludes injury or damage that is "expected or intended" must be "of the same general type as intended by the insured." *Knowles,* 113 N.M. at 707.  In *Knowles*, the trespass alleged in the complaint was the same type of harm that was "expected" when the gate was erected on property to block access.  In *Hartford*, the property damage from flooding was of the same type intended as a result of directing the water diversion system onto the landowner's property.  Also, in *Vihstadt,* the suicide (although thwarted) was the intended harm.  In this case, the harm alleged was the property damage in the form of the underground cavern becoming large enough to cause an underground collapse.   However, Defendants offer facts which show that the harm alleged in the underlying complaint, even taking the facts favorably to MCC as the movant, is not the same as any harm or injury that I&W expected or intended.[4]

C.      Diminution in Value

---

[4]  There is a similarity to some degree between the analysis whether an event is an "accident" and whether the harm was "intended " or "expected." *Hartford*, __ F.Sup.2d ___, 2012 WL 1132499 (D.N.M. 2012) ("[w]hether something is expected or intended . . . is also part of the definition of accident").

Plaintiff argues that the jury in the underlying state court case did not find property damages, and instead awarded damages based on diminution in value, which is an economic loss that is not covered by the policy.

The cases relied on by Plaintiffs do not offer much support for MCC, because those cases involve losses that were purely economic. *See, e.g., Hartford Acc. & Indem. Co. v. Pacific Mut. Life Ins. Co.,* 861 F.2d 250 (10th Cir. 1988) (where coverage was provided only for diminution in value of building, if any, *in excess* of cost of replacing defective curtain wall); *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.,* 588 S.E.2d 112, 116 (S.C. 2003) (homeowners solely alleged economic damages, particularly the diminished value of their property, as a result of contractors' knowing sale of homes located on polluted property containing hazardous materials).

As Defendants point out, the damages that were awarded in the state court case constitute "property damage" as defined by the Policy: "a. Physical injury to tangible property, including all resulting loss of use of that property. . . ." *See* Ex. 11, page 13 ("Definitions").   Unlike the situations in the cases cited by Plaintiff, the damage sustained by Defendants—the roof collapse into the cavern as well as other structural damage and drainage problems—is not intangible or merely an economic loss. *See, e.g.,* Doc. 93 (Deft's Mot. for Sum.J,) Ex. M; Ex. D: at 18-19; at 21:5-19 and attachment 2-1 (photo).  Such damage is covered under the Policy because it constitutes "property damage" as defined in the Policy. *See Mid-Continent Cas. Co. v. Academy Development, Inc.,*  476 Fed.Appx. 316, 2012 WL , 2012 WL 1382459 (5th Cir. 2012) (homeowners' petition against real estate developers alleging diminution in value of homes attributable to damage to their properties by water leakage from man-made lakes alleged "property damage" sufficient to trigger insurer's duty to defend under commercial general

liability insurance policies); *Mid-Continent Cas. Co. v. Bay Rock Operating Co*., 614 F.3d 105 (5th Cir. 2010) (oil well blowout, causing property damage to neighboring property was covered under commercial general liability policies and umbrella policy issued to operator ).   Thus, while the Court agrees with Plaintiff that pure economic loss without physical injury does not come within coverage under the Policy, this is not the situation here. While the measure of damages argued at trial was related to diminution of value of the property, it was used to calculate the measure of damages caused by I&W and would be covered under the Policy.

Until this point in the Court's analysis, the Court would have denied Plaintiff's summary judgment motion.  However, Plaintiff's last argument alone and in itself is sufficient to grant summary judgment for Plaintiff.

## IV. Oil Industries Limitation Endorsement

Plaintiffs' Exhibits 20-24 are copies of Oil Industries Limitation Endorsements (also referred to as "Umbrella" provisions by Plaintiff) (hereinafter "Oil Endorsement") which state that the parties agree that the insurance under the Policy "does not apply to . . . Loss of damage to, or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the Insured." *See* Ex. 20 at (A)(2).  Defendants' only response is to argue that the provision is vague and ambiguous, but they do not expand on this position at all. The may be because there is actually nothing vague or ambiguous about the language of this provision.

Defendants' response to Plaintiff's argument on this issue is less than half a page. Defendants offer no legal argument or factual basis as to the applicability of the provision to the facts at hand.  In the underlying lawsuit, the Circle S parties alleged that I&W's negligent mine operation caused the land to subside and cause structural damages in the floors and walls.

Pltff's Ex. 10, ¶¶ 6-7. Thus, it is undisputed that the property damage resulted from a large

cavern forming underneath Defendants' land causing sinking and probable collapse of the land.

These facts come within express language of the Oil Endorsement.

Defendants' only other argument is that "the extraction of salt from Defendants' property

was not argued at trial. . ."  and that in the state court lawsuit,  I&W was granted summary

judgment concerning damages resulting from the extraction of salt from Defendants'  property.

Doc. 94 at 26.   The "salt extraction issue" which was addressed on summary judgment in state

court dealt with the value of the salt that been removed from the property and with the Circle S

parties' request for compensatory damages.  The state court judge granted I&W summary

judgment on that issue.  Doc. 94 (Resp.), Ex. BB (State Court Order).   This issue has nothing to

do with the resulting damage and subsidence of the Circle S property caused by I&W, which as a

matter of law the Court finds comes within the Oil Endorsement.

Accordingly, based on the undisputed material facts and the relevant law, there is no

coverage under the clear and unambiguous language of the Oil Industries Limitation

Endorsement.

### CONCLUSION

In sum, I find and conclude that the Oil Industries Limitations Endorsement provides no

coverage for the property damage sustained by Defendants, and thus Plaintiff has no duty to

indemnify Defendants for the damages awarded by the jury in the state court lawsuit.

In light of the Court's ruling on Plaintiff's summary judgment motion on coverage (Doc. 83), I

find that other pending motions (Defendants' cross-motion for summary judgment (Doc. 93) and

Plaintiff's motion on punitive damages (Doc. 85) shall be, and are, denied as moot.

**THEREFORE,**

**IT IS ORDERED**  that Plaintiff's Motion for Summary Judgment on Coverage, filed on June 29, 2012 **(Doc. 82)** is hereby GRANTED for reasons described in this Memorandum Opinion and Order;

**IT IS FURTHER ORDERED** that, as a result of the Court's ruling on Plaintiff's Motion for Summary Judgment on coverage, Defendants' Cross-Motion for Summary Judgment **(Doc. 93)** and Plaintiff's Motion for Summary Judgment on Punitive Damages **(Doc. 85)** are hereby DENIED as MOOT.

Judgment shall be entered separately.

_____
UNITED STATES DISTRICT JUDGE